MYLES S. BREINER  4364
Attorney at Law, Inc., ALC
345 Queen Street, Suite 200
Honolulu, Hawaii 96813
Telephone: 526-3426

Attorney for Defendant
EDGAR ECHAVEZ PANCIPANCI

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Cr. No. 05-00079 DAE |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| EDGAR ECHAVEZ PANCIPANCI, ) | DEFENDANT EDGAR ECHAVEZ |
| ) | PANCIPANCI'S SENTENCING |
| Defendant. ) | MEMORANDUM; |
| ) | CERTIFICATE OF SERVICE |
| ) | |
| ) | SENTENCING: JUNE 5, 2006 |
| ) | |

DEFENDANT EDGAR ECHAVEZ
PANCIPANCI'S SENTENCING MEMORANDUM

COMES NOW, Defendant EDGAR ECHAVEZ PANCIPANCI, by and through his attorney, MYLES S. BREINER, hereby respectfully submits the following sentencing memorandum in mitigation of the charged offense.

In <u>U.S. v. Booker</u>, 125 S.Ct. 738 (2005), the Supreme Court held that the sentencing guidelines are advisory only, not mandatory. The other factors set forth in 18 U.S.C. § 3553(a) must also be considered in fashioning the appropriate sentence. These mitigating and/or sentencing factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed, reflecting not only the seriousness of the offense and adequate deterrence to criminal conduct, but also educational and vocational training and other correctional treatment in the most effective manner; and (3) the need to avoid unwarranted sentence disparities. <u>U.S. v. Menyweather</u>, 431 F.3d 962 (9th Cir. 2005); <u>U.S. v. Menyweather</u>, 2006 U.S.App. LEXIS 11467 (9th Cir. Cal. May 9, 2006).

Because the guidelines are not biding, "courts need not justify a sentence outside of them by citing factors that take the case outside the 'heartland.'" <u>U.S. v. Ranum</u>, 353 F.Supp.2d 984, 987 (E.D. Wis. 2005); <u>U.S. v. Williams</u>, 2006 WL 68559 (11th Cir. Jan. 13, 2006) (The district court's sentence [below the guidelines] does not have to be justified as a downward departure. After <u>Booker</u>, the sentencing Guidelines are advisory, and the sentencing court, in its own discretion, can move below the advisory Guideline range without a motion for downward departure as long as the resulting sentence is reasonable."). In fact,

even if the court denies a traditional downward departure based on a certain mitigating factor, the court may nevertheless consider the same factor and reach the same sentence under an 18 U.S.C. sec 3553(a) analysis.

"Fashioning a just sentence cannot be reduced to a mere arithmetical exercise [and that] reliance solely on numbers, quantities, offense levels, criminal history categories, and matrices produces an illusory precision that obscures the fact that sentencing, in the end, must invovle the exercise of judgment." U.S. v. Biheiri, 356 F. Supp.2d 589 (E.D. Va. 2005). Accordingly, defendant Edgar Pancipanci moves this court to consider the following mitigating factors in fashioning an appropriate and just sentence.

1. **Defendant Pancipanci had no knowledge of, or control over, the amount or purity of the drugs he received in the mail.** In U.S. v. Mendoza, 121 F.3d 510 (9th Cir. 1997), the court found that the district court had discretion to depart where the defendant had no knowledge of or control over the amount of purity of the drugs, if the court determines that the facts are outside the heartland of such cases. See, U.S. Lipman, 133 F.3d 726 (9th Cir. 1998) and U.S. v. Defterios, 343 F.3d 1020, 1023 (9th Cir. 2003). In U.S. v. Jaber, 362 F. Supp. 2d 365, (D. Mass. 2005), the court found that a departure from 57 months to probation was proper in a methamphetamine conspiracy case in part because the

defendant "was [merely] a functionary. Although his responsibilities were growing, he still did not take a profit; he was on salary. He had even less control over the direction of the enterprise than [the co-defendant]. He took orders from [the co-defendant]. The amount of pseudo ephedrine that passed through his hands reflects someone else's decisions, not his own." See, U.S. v. Zapata-Trevino, 378 F.Supp. 2d 1321 (D.N.M. 2005). Similarly, in U.S. v. Chalarca, 95 F.3d 239, 245 (2d Cir. 1996), the court upheld a downward departure where the district court found the defendant had no knowledge of any particular quantity of cocaine and no particular quantity was foreseeable to him in connection with the conspiracy of which he was a member. See, U.S. v. Palafox, 198 F.3d 1182 (9th Cir. 2000).

Here, defendant Pancipanci was the recipient of a package, over which he possessed neither knowledge or control regarding the quality and quantity of the illegal substance delivered to his residence.

2. **Defendant Pancipanci was an addict who received drugs over which he did not exercise control.** In U.S. v. Williams, 78 F. Supp. 2d 189 (S.D.N.Y. 1999), the court found that defendant's relatively minor prior drug convictions warranted departure from the career offender guidelines, in part because of his addiction and relatively low level in the distribution chain. In U.S. v. Webb, 966 F. Supp. 16 (D.D.C. 1997), the court distinguished between major

dealers and addicts, departing from 70 to 40 months where the defendant, only an addict, could have been arrested after he sold the undercover agent small quantities on two prior occasions, but who instead was arrested only after a third and more substantial delivery in excess of 50 grams.

Here, defendant Pancipanci at the time of his arrest was a crystal methamphetamine addict, abusing drugs and alcohol on a daily basis. According to defendant, he used crystal methamphetamine between 2004 and February 2005, smoking up to ½ gram of crystal methamphetamine each day. This conduct does not excuse nor rationalize his criminal behavior, but places it in the appropriate context of a deteriorating psychological profile and inevitable tragic result.

3. **Defendant Pancipanci's criminal history over-represents the seriousness of his past criminal conduct and his propensity to commit crimes.** According to the presentence report, defendant Pancipanci's criminal history points are 3, based upon a prior State of Hawaii conviction on 1/17/01 for Robbery in the Second Degree (Cr. No. 99-2220), and application of U.S.S.G. § 4A1.1(a) and 4A1.2(e)(1). However, as noted above, pursuant to U.S. v. Booker, 125 S.Ct. 738 (1/12/05), the U.S. Sentencing Guidelines are only advisory, and while the Court must take the Guidelines into account, it is not bound to apply the Guidelines.

5

Because defendant Pancipanci, does not qualify as a "career offender" under U.S.S.G. § 4B1.1(a), as he does not have "at least two prior felony convictions of either a crime of violence or a controlled substance offense", the court under U.S.S.G. sec 4A1.3(b)(3), is not limited to a one criminal history point departure. In U.S. v. Cuevas-Gomez, 61 F.3d 749 (9th Cir. 1995), an illegal reentry case, the court found that the district court may depart downward where the defendant received a 16-level upward adjustment in offense level, if the court believes the criminal history is overstated. In U.S. v. Lawrence, 916 F.2d 553, 554 (9th. Cir. 1990), even though the defendant was career offender because of two drug convictions, the court determination of a low risk of recidivism justified a downward departure.

In U.S. v. Hammond, 240 F.Supp.2d 872 (E.D. Wisc. 2003), the district court granted a request for departure from criminal history category III to category II, because the criminal history was overstated. According to Hammond , the court may consider: (1) the age of the priors; (2) the defendant's age at the time of the prior offenses; (3) whether drug and alcohol use were involved in the prior offenses; (4) the circumstances of the prior offenses; (5) the length of the prior sentences; (6) the circumstances of the defendant's life at the time of the prior offenses; and (7) the proximity of the prior offenses. In Hammond, the prior

convictions were unrelated to the instant offense, relatively minor and remote in time, and the defendant was young and under the influence at the time of the incident. See, U.S. v. Burrus, 109 Fed. Appx. 59 (6th Cir. 2004).

Here, defendant Pancipanci's prior offenses occurred in 1999 approximately 5 years ago, while he was addicted to drugs, alcohol and gambling. Defendant Pancipanci's early release from State parole demonstrated an ability to abide by the rules and succeed. Unfortunately, because of his additive personality and related psychological problems, when confronted with the pressures and responsibilities of single parenting, he retreated to drugs, alcohol, and gambling as an easy fix to his problems.

4. **Defendant Pancipanci, during his release on State parole had an excellent employment history**. Beginning in 2003, he was self-employed as a taxi driver, earning $1,500.00 to $2,000.00 per month. Also, according to his employment records, from Dec. 2003 to April 2004, he was also employed as a driver for Otani Produce of Honolulu. Defendant Pancipanci's performance while on parole, in fact, reflected his ability to support himself and his two young boys, and provide a stable life and sense of family.

5. **Defendant Pancipanci timely change of plea and cooperation spared the Government time and expense and manifested "super" acceptance**

**of responsibility.** In U.S. v. Brown, 985 F.2d 478, 482-83 (9th cir. 1993), the court found that under U.S.S.G. § 5K2.0, in light of the defendant's confession, the court can depart downward from the range if it determines that the two point reduction does not adequately reflect acceptance. Similarly, voluntary restitution exhibiting extraordinary acceptance of responsibility can justify downward departure. U.S. v. Miller, 991 F.2d 552 (9th Cir. 1993).

Here, defendant Pancipanci, not only entered a timely plea and spared the Government the time and expense of a lengthy trial, but elected not to contest the initial search and seizure of the package by UPS, and waived all claims to the monies and property (vehicles) seized at the time of his arrest, and subsequently identified to Government agents the individual responsible for the illegal shipment of crystal methamphetamine to Hawaii. In U.S. v. Stewart, 154 F.Supp.2d 1336 (E.d. Tenn. 2001), the court awarded defendant, who plead guilty to possession of eight ounces of cocaine, an eight-level downward departure, in addition to three normal levels, for "extraordinary acceptance", because the defendant continued to plead guilty even though the court had granted the co-defendant's suppression motion which could have resulted in dismissal of defendant's case.

6.   **Defendant Pancipanci has demonstrated exemplary post-conviction rehabilitative effort while incarcerated at the Honolulu Federal**

**Detention Center pending sentencing**. Prior to Booker, U.S.S.G. § 5K2.19 did "not restrict downward departures based on extraordinary rehabilitative efforts prior to sentencing." (U.S.S.G. , Appendix C., No. 602). Since, Booker, efforts to rehabilitate are specific mitigating factors the court should consider in favor of variance from the Guidelines. In U.S. v. Green, 152 F.3d 1202, 1206 (9th Cir. 1998), defendant was convicted of manufacturing 4,000 marijuana plants, however, based upon the defendant's post-offense rehabilitative efforts, the court's 11 level downward departure was not an abuse of discretion. See, U.S. v. Wilson, 51 Fed. Appx. 697, 699 (9th Cir. 2002).

Here, defendant Pancipanci has successfully completed several important rehabilitative programs while incarcerated including, "Active Parenting Of Teens", "Workplace Essential Skills: Communication and Writing", and the "A.C.E. Fitness Class". Clearly, the goal of rehabilitation is not served if a defendant has nothing to look forward to beyond imprisonment. Hope, as an adjunct to rehabilitation, is a necessary condition of incarceration, and the court should be reluctant to sentence a defendant in such way as to destroy all hope of a useful and productive future.

7.  **Defendant Pancipanci cooperated with authorities to prosecute others in conjunction with his offense**. Pursuant to U.S.S.G. § 1B1.8, defendant

Pancipanci early on in the case provided a proffer to Government agents identifying previously unknown sources, as well as the individual responsible for the FedEx shipment that resulted in his arrest. Defendant Pancipanci continued to cooperate with the Government, and subsequently provided additional information including telephone numbers and aliases of the supplier in his case. U.S. v. Kaye, 140 F.3d 86 (2nd Cir. 1998) ("when a defendant moves for a downward departure on the basis of cooperation or assistance to government authorities which does not involve the investigation or prosecution of another person, U.S.S.G. § 5K1.1 does not apply and the sentencing court is not precluded from considering the defendant's arguments solely because the government has not made a motion to depart.)

8. **Defendant Pancipanci's compulsive gambling disorder in conjunction with his drug addiction and alcoholism are important factors the court should consider in fashioning an appropriate and just sentence.** In U.S. v. Vieke, 348 F.3d 811 (9th Cir. 2003), the district court awarded defendant a four-level downward departure to probation in a credit card fraud case where the court had concluded among other factors that the crime was committed because of a pathological addiction to gambling. See U.S. v. Castellanos, 355 F.3d 56 (2d. Cir. 2003).

Here, defendant Pancipanci's addiction to gambling, fueled by the abuse of drugs and alcohol, set in motion an inevitable downward spiral that cost him his freedom, and the jeopardized his children's future.

9. **Defendant Pancipanci's incarceration will have a harsh and significant impact on his children and innocent family members**. Defendant Pancipanci was born in the Philippines on Jan. 7, 1962, and is the ninth of twelve children. Both of his parents are deceased. In 2002, Babylonia Sayson, defendant's girlfriend and mother of his two boys, Peter (age 9) and Prince Edgar (age 12), passed away due to cancer. Since that time, defendant Pancipanci as a single parent, with the assistance of family members, has worked to raise his children. In U.S. v. Menyweather, 431 F.3d 962 (C.A 9th 2005), the court found no abuse of discretion for the district court to depart eight levels to probation in part because of unusual family circumstances and the particular hardship that would befall the defendant's daughter.

Here, defendant Pancipanci's arrest and incarceration has had (and will continue to have) a significant impact on his children and family. Because of his addictions and life choices, defendant Pancipanci has condemned his children to a life they don't deserve, and one they should never have to experience.

Based on the foregoing, defendant Pancipanci, moves this court to consider

11

the various factors set forth in his sentencing memorandum and fashion an appropriate and just sentence that balances punishment with the prospect of hope and rehabilitation.

Dated:   Honolulu, Hawaii _____May 22_____, 2006.

_____
MYLES S. BREINER

Attorney for Defendant
EDGAR ECHAVEZ PANCIPANCI

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Cr. No. 05-00079 DAE |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| EDGAR ECHAVEZ PANCIPANCI, ) | |
| ) | CERTIFICATE OF SERVICE |
| Defendant. ) | |
| ) | |
| _____ ) | |

CERTIFICATE OF SERVICE

    The undersigned hereby certifies that a copy of the foregoing document was duly

served upon the following party(ies) via **hand delivery** on _____, 2006.

    TO:  MICHAEL K. KAWAHARA #1460
          Assistant United States Attorney
          6100 PJKK Federal Building
          300 Ala Moana Boulevard
          Honolulu, Hawaii   96813

          NEIL W. TSUKAYAMA
          U.S. Probation Officer
          PJKK Federal Building
          300 Ala Moana Boulevard
          Honolulu, Hawaii   96813

Dated:   Honolulu, Hawaii _____, 2006.

_____
MYLES S. BREINER

Attorney for Defendant
EDGAR ECHAVEZ PANCIPANCI